Commonwealth of Pennsylvania *v.* George Vogle et al., Appellants.

Argued March 10, 1930.

Before TREXLER, P. J., KELLER, LINN, GAW-THROP, CUNNINGHAM, BALDRIGE and GRAFF, JJ.

66

*William J. Fahey,* for appellant.

*William M. Rosenfield,* District Attorney, for appellee.

OPINION BY LINN, J., April 18, 1930:

Appellants, George Vogle and Ruby Vogle, were tried with their brother and sister, Fred and Caroline Vogle, for violating the prohibition act: 1923, P. L. 34. All were convicted of possession and sale. Two of them, George and Ruby, were sentenced and their appeals are now before us.

The learned trial judge in his opinion, filed pursuant to rule 58, so completely disposes of the complaints made below, and repeated here, to the effect (1) that the charge was so favorable to the Commonwealth and so prejudicial to defendant that a new trial should have been granted, and (2) that the usual time for filing a motion for a new trial should have been extended with leave to file additional reasons, that nothing more need be said about them. The assignments of error raising those questions are overruled.

There remains in the appeal of George Vogle only the single point concerning which the trial judge said he was in doubt, and this requires some statement of part of the evidence. The appellant contends that evidence of confidential communication by client to attorney was received in violation of the evidence act defining the privilege which may be asserted by the client.

In the borough of Towanda one or more of the defendants conducted an establishment at which they sold confectionery and ice cream, and operated a soda fountain, etc. Appellant's history of the case states that the building in which this business was conducted was owned by Fred Vogle and that the business was owned by Caroline Vogle. Below the store, which fronted on the street level, were a cellar and a sub-cellar. The parties did not live in the building. Pursuant to evi-

dence of the sale of alcoholic liquor to a witness who also testified in the case, a search warrant had been obtained and a search made on July 2, 1929, and in the cellars a small quantity of alcohol was found in one or more of the containers kept there, and some empty containers,. which witnesses said, judging from the odor emitted, must have contained alcohol, were seized. The attorney, who testified, is Mr. Wilson. The record gives no information as to when he was retained or when he was dismissed or withdrew; he did not appear of record for any defendant and did not participate in the trial. He was called in rebuttal and all the evidence on the subject is as follows: "William P. Wilson, Esq., a witness called upon the part of the Commonwealth, being duly sworn, testified as follows: Direct examination by Mr. Rosenfield, district attorney: Q. Mr. Wilson, you are an attorney, practicing in Towanda, Pennsylvania? A. I am. Q. Were you at the Vogle store on or about, at 417 Main Street, Towanda, just north of L. Marks' store, on or about the second day of July of this year? A. I am not certain about the day. Q. Was it about that day? A. I was at the Vogle store some time about, but in a very short time following the service of the search warrant and the arrest of George Vogle. Q. Did you examine some cans down there, similar to this can, which is Commonwealth's Exhibit, marked by the chemist, "F. 20;" did you examine some cans similar to that? A. Yes. Q. Did you smell of them, smell of the contents? A. I removed the covers, the screw-caps, from ten. Q. Can you tell whether or not there was an alcohol smell in any of those cans? A. There was not in eight of them. Q. How about the other two? A. I don't know as I am a very good judge. Q. What did it smell like —what would you say it was, in your opinion? A. In my opinion, it was alcohol that I could smell in two of them. Q. At that time you were representing Mr. George Vogle? A. I so regarded. Cross examination

by Mr. North, counsel for defendants: Q. And did you also go over to where the peanut roaster was, when you were down there that night? A. I did. Q. And did you look up over the peanut roaster? A. I did." No objection was made to receiving Mr. Wilson's evidence. He had been counsel for only one of the four defendants. There is nothing in the record to show how or in what circumstances he came to be on the premises or to make his observations. It does not appear whether he was accompanied by any other person or not, though the record shows that others— called as witness—were also in the cellars at some time or other after the search warrant had been executed, and saw, and in some cases examined the containers that were there. The record shows that before he was on the premises, some alcohol, and a number of the containers already referred to as having been offered in evidence, had been removed by the officers with the search warrant. Appellants' brief contains this statement "certainly when George Vogle took Mr. Wilson down into the cellar to acquaint him with the circumstances of the case ......;" it finds no support of any kind whatever in the evidence, nor is there any evidence in the record that George Vogle, the client, or any one on his behalf, ever communicated anything to Mr. Wilson orally or by writing, gesture or otherwise.

The title of the Evidence Act of May 23, 1887, P. L. 158, is "Relating to the competency of witnesses, and to the rules of evidence in civil and criminal cases, revising, declaring and consolidating some of the existing acts and rules of law upon these subjects, and also extending some of the provisions of the same." Section 2, provides—"Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client, or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client."

The record does not require us to consider the scope of the common law rule on the subject (see Wigmore on Evidence, Vol. 4, chapter LXXX) or to determine to what extent the Act of 1887 narrows the operation of the common law rule. Counsel, who presented the case in this court, came into the case after verdict. Trial counsel attributed no force to the complaint now made, because he made no objection to the evidence, either when it was given, or later; he requested no instructions to the jury about it, although asked by the judge at the end of the charge whether there was "any branch of this case that I have not adequately instructed the jury on." The court below understood that the client waived the privilege, (assuming it to be one that he could assert) as appears from the following quotation from the opinion filed: "Mr. Wilson was not asked concerning, nor did he testify to any confidential communications, or to anything said or done by any of the defendants. His testimony was limited to his observation and examination of the five gallon containers which the searching officers left in the cellar of the Vogle building after they had discovered them in the search made pursuant to the search warrant. As we view it, this was not the disclosing of any confidential communications made to Mr. Wilson. All that Mr. Wilson testified to had already been discovered by the Commonwealth's officers, the cans had been found, they had been examined, three of the thirteen found had been taken away by the searching officers to be used in evidence. Mr. Wilson, as stated before did not refer to any conversations or communications or acts upon the part of the defendants which would be considered as confidential communications; he testified to nothing that the Commonwealth did not already know. No objection was made to his competency as a witness and no requests were made at any time for an instruction to the jury to disregard his testimony. We then assumed that defendants were acquiescing in his testi-

fying, and we are not convinced that we were wrong in this assumption. No question was raised as to his having testified until after the rule for a new trial had been discharged as to George and Ruby Vogle and they had been sentenced. The first time this question was referred to was then raised by Mr. Fahey on filing the additional reasons, the day of the argument of the rule as to Fred W. and Caroline Vogle.''

Before the assertion of the privilege in question can keep out relevant testimony, the trial judge must determine that the facts in evidence show a case in which the privilege may be claimed; the burden of establishing that is, of course, on the client; in this case, such facts do not appear. All we have is that Mr. Wilson said he ''regarded'' himself as representing George Vogle. If we assume that he had been retained by or on behalf of Vogle, we are still without evidence that Vogle or any one on his behalf communicated anything to Mr. Wilson; there is nothing to show that Vogle or any one on his behalf, took Mr. Wilson into the cellar or directed him to go there or even knew that he went there. As the record shows that a number of other people had been in the cellar and had examined the containers which were obviously lying around for anyone's inspection, it cannot be said that information obtained by the senses by inspection of the containers, was confidential in any view that we may take. Passing then, but without predicating our conclusion on (1), the fact that the evidence was received in circumstances in which the trial judge was led to believe that the privilege had been waived, and (2) that the point was not raised until after sentence had been imposed, we still do not have a case requiring us to determine the possible scope of the word ''communication'' as used in the statute. The circumstances shown in the record clearly establish that there was no failure to observe the evidence act in the respect suggested; the assignment is overruled.

The judgments are affirmed and the records remitted to the court below and it is ordered that the defendants appear in the court below at such time as they may be there called and that they be by that court committed until they have complied with the sentences or any part thereof which had not been performed at the time the appeals in these cases were made a supersedeas.